# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| Kelly Wilson, <br><br> Plaintiff, <br><br> v. <br><br> Experian Information Solutions, Inc., et al.; <br><br> Defendants. | Civil Action No. 04-71468 <br><br> Hon. Nancy G. Edmunds <br> Magistrate Judge Morgan |

Ian B. Lyngklip (P47173)
Attorney for Plaintiff
Lyngklip & Taub Consumer Law Group, PLC
24500 Northwestern Highway, Suite 206
Southfield, Michigan 48075
248-746-3790

Brad A. Sobolewski (OH 0072835)
Lead Counsel for Defendant Experian
Information Solutions, Inc.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
216-586-3939

Sidney L. Frank (P13637)
Tamara E. Fraser (P51997)
Local Counsel for Defendant Experian
Information Solutions, Inc.
Frank, Haron, Weiner and Navarro
5435 Corporate Drive, Suite 225
Troy, Michigan 48098
248-952-0400

Robert M. Horwitz (P51466)
Attorney for American Express Company
Dykema Gossett PLLC
400 Renaissance Center, 34th Floor
Detroit, Michigan 48234
313-568-6947

## AFFIDAVIT OF DAVID BROWNE

I, David Browne, being duly sworn, declare and state as follows:

## I. Background

1. I am a Compliance Manager for Experian Information Solutions, Inc. ("Experian"). I have been so employed at Experian since September, 1996, the effective date of Experian's acquisition of TRW Inc.'s ("TRW") consumer credit reporting business. I was similarly employed by TRW for approximately twenty years. Based on my experience, I am

knowledgeable about Experian's policies and procedures for the compilation, retention, reinvestigation and disclosure of consumer credit information, as well as Experian's computer systems utilized in doing so. My current duties include helping to ensure that Experian's computer systems and procedures comply with federal and state credit reporting laws and Experian's requirements for quality. The facts stated in this declaration are true of my own personal knowledge, and if called to testify to them, I would competently do so.

2. I submit this affidavit in support of Experian's Motion for Protective Order in the above-captioned matter.

3. In most businesses, a computer system is a valuable tool developed to aid management in the running of the business. This is not the case in the credit reporting industry. Experian's credit reporting computer system *is its business*. To operate its national credit-reporting service, Experian has designed a unique computer system to process information received from tens of thousands of diverse lenders and other entities involved in the credit industry, from the public record, and from other sources. Experian's computer system is designed with knowledge that has been gathered over a period of time that extends back more than 30 years. During that time, there have been minor changes, major changes, and even a complete redesign of Experian's system, which took place about seven years ago when Experian incorporated the state of the art technology of IBM's DB2 relational database. Experian has invested very large sums of money and countless hours of employee time throughout the years developing and enhancing its sophisticated computer system to achieve maximum possible accuracy and completeness of the credit information Experian provides to those with permissible purposes for receiving consumer credit information.

4. Experian's credit reporting business relies on the use of its computer hardware and software because Experian maintains credit information on approximately 200 million

consumers. Development of such a highly accurate consumer credit reporting computer system involved delicate incorporation of accumulated knowledge -- knowledge which must, therefore, be protected from those who would seek to improve or develop a rival system by obtaining Experian's secrets, instead of investing as extensively as Experian has done over many years, and continues to do so today.

5. In order to protect its system, Experian has introduced a number of safeguards including the addition of an information security department within Experian, information security regulations and mandatory information security training of all employees. Experian also restricts access to sensitive systems secrets within its own walls. In fact, documents containing secret information, such as those at issue in this case, are given confidential status at Experian and access is permitted to only a select few employees who have an absolute need to know.

6. Consequently, in litigation matters, Experian vigorously strives to limit the production of certain internal documents to situations in which a protective order has been executed. Experian does so for three main reasons: (1) to prevent the reverse engineering of the design of Experian's system, (2) to minimize the risk of unauthorized access to the credit histories of more than 200 million consumers, and (3) to try to prevent businesses known as "Credit Clinics" from gaining information that would help them to permit consumers who failed to pay their bills to erase such information from their credit reports -- jeopardizing the integrity of the entire credit reporting industry and adversely impacting consumers who do pay their bills on time.

7. Unfortunately, Experian does not have the ability to assign an identification number to each of the more than 200 million consumers that have credit information stored

within its database. Experian is, therefore, forced to use identifiers -- consumer name, address and social security number -- none of which are unique identifiers or have check digits.[1]

8. Consequently, in developing procedures for credit reporting, Experian had to design a system that relies largely upon identifying information that is not unique, that is used inconsistently, and that is supplied to Experian by third parties. The fact that Experian is successful in achieving a very high level of completeness and accuracy in its consumer credit reports is possible only because Experian developed a very sophisticated and complex matching system called "Find Consumer."[2] Find Consumer was made possible following extensive studies conducted over several decades. This matching system is a crucial component in Experian's

---

[1] One of the main tasks facing a credit reporting agency is its ability to accept credit information from tens of thousands of different lenders and then be able to take that information and place it on a credit report pulled subsequently for a given consumer. This is a difficult task because consumers use inconsistent identification, identification that is not unique, nicknames, names that have been changed (often due to marriage or divorce) and, furthermore, names that are misread, misspelled or mis-given. The problem here is the fact that unique identifiers by which consumers could uniquely identify themselves and which also embody protection against misspellings, transpositions, use in different forms, changes, etc., do not exist. Banks do not have such a problem because when a consumer applies to them for an account, they can assign an account number that is a unique identifier to that consumer. Banks can then mandate that the consumer conduct banking transactions by providing the unique bank account number. Similarly, colleges and employers are able to take the same approach with respect to student identification cards or employee badge number. In the case of a company, it will almost invariably decide to use a unique badge number for each of its employees. Quite often, companies will take that extra step and build into that unique employee badge number a feature that will enable the company to detect if that badge number has been given incorrectly. This feature is called a check digit. For example, before an employee badge number would be issued to an employee, the employer's computer system would first identify the next available first five digits. The computer would then use these five digits in a special calculation, resulting in the calculation of a single digit, a "check digit." The badge would now consist of six digits. The sixth digit, although merely appearing to be the last digit of the badge number, would be the "check digit" and would be the security feature. Whenever the six digit badge number is entered into the computer, the system would immediately perform the same calculation on the first five digits of the badge number. If the system arrives at the same sixth digit, the badge number and any information attached to it would be accepted. However, if it fails to arrive at the same sixth digit after performing the calculation, the badge number and the accompanying information such as hours worked during that pay period will be rejected due to it having been provided inaccurately. Unfortunately, no such protection feature is possible when using a consumer name or even social security number, which are what Experian must use for identification. This is because Experian is not in a position to require consumers to obtain a unique identifier from Experian prior to obtaining credit. Similarly, Experian is not in a position to require consumers to provide lenders with such unique identification whenever applying for credit. Finally, Experian is not in a position to require lenders to accept such unique identification from consumers and report it to Experian whenever making inquiries or reporting consumer credit information to Experian.

[2] "Find Consumer" is the name given to that part of Experian's system that is charged with the grave responsibility of deciding what information should display on a consumer credit report in response to an inquiry received from a lender wishing to review that report.

ability to be successful despite fierce competition. If one were to study certain internal reports, including Administrative Reports, Dispute Response (or "D/R") Logs, and Disclosure Request Logs, they would reveal information about the design and architecture of Experian's vast database. Experian's sophisticated and complex database architecture plays a vital role in enabling Experian to provide a great many products and services to its customers that it has reason to believe the architecture of its competitors does not permit. Each such internal report that falls into the wrong hands contains a picture of information that speaks to the rules of Find Consumer and to the design architecture implemented by Experian. However, it is not simply a matter of redacting codes from these reports. The structure of the information on these reports, in conjunction with all of the identifying information about a consumer, reveals information about the variables integrated into Experian's sophisticated matching system. Each additional such internal report is a new picture which would, therefore, provide new clues to the rules of Find Consumer and Experian's design architecture overall. The more such pictures fall into the wrong hands, the more clues become available on how to reverse engineer Experian's matching system.

## II.  The Documents at Issue

9.      Plaintiff purports to require Experian to produce an Administrative Report, as well as D/R Logs and Disclosure Request Logs (the "Confidential Documents") pertaining to Plaintiff. The information contained in the Confidential Documents sought by Plaintiff consists of certain historical credit information (Administrative Report), an historical record of communications between Plaintiff and Experian pertaining to Plaintiff's Experian file (the Disclosure Request Logs), and an historical record of Experian's reinvestigations of information disputed by Plaintiff (the D/R Logs). The specific Confidential Documents sought by Plaintiff

have not been produced in any prior litigation or provided to anyone whatsoever outside of a very limited number of Experian employees and Experian's counsel.

### A. Administrative Report

10. The first Confidential Document Experian seeks to withhold in this particular case, absent a protective order, is Mr. Wilson's Administrative Report which was generated on May 4, 2004 for internal research purposes in response to this lawsuit. This particular report contains a confidential internal personal identification number (or "PIN") that is a unique number developed by Experian's computer system for the information regarding this consumer. The PIN is what results from the combination of name and address information that has been provided to, and coded by, Experian. Mr. Wilson's Administrative Report also contains seven versions of Mr. Wilson's name, including the version of his name entered to compile this report, address lines, social security information, birth date, nine pages of specific subscriber information, including personal account numbers belonging to Mr. Wilson, spouse information, and information regarding whether Experian performed certain maintenance on Mr. Wilson's file.

11. Mr. Wilson's Administrative Report contains numeric and alphabetical codes throughout. For example, each name and address variation appearing on the report is reflected by a different confidential numeric code. Similarly, the identifying and update information pertaining to each of Mr. Wilson's tradelines is also represented by different confidential numeric codes. Additionally, inquiries are listed on Mr. Wilson's administrative report detailing the name and address codes that were entered in response to each inquiry resulting in the production of a credit report. From examining this report, it is clear which permutations of Mr. Wilson's name are permitted by Find Consumer to appear on the report. This is informative to

someone wishing to reverse engineer Find Consumer. By studying the permutations of name and address on an administrative report for a different consumer, further clues will emerge about what permutations of consumer names are permitted by Find Consumer to display -- more and more clues to facilitate the reverse engineering of Experian's Find Consumer and design architecture. By carefully analyzing what displays in a report, one can learn a great deal about Experian's matching rules. The same situation applies to the way tradelines appear on the Administrative Report. This entire report is replete with codes and reference numbers that also provide clues to the design architecture of Experian's system. Experian's competitors would benefit substantially by gaining access to such information. Mr. Wilson's Administrative Report has never been produced before, contains highly confidential information and was prepared only for investigative purposes upon receipt of this lawsuit. Thus, Experian has a significant interest in protecting it.

**B.     Dispute Response Logs ("D/R" Logs)**

12.    The second category of Confidential Documents Experian seeks to withhold in this particular case, absent a protective order, are Mr. Wilson's D/R Logs. Mr. Wilson's D/R Logs contain confidential information similar to that contained in his Administrative Report. The D/R Logs contain a confidential internal PIN, as well as name and address codes -- none of which appear in any credit reports to third parties, or in any disclosures of the consumer's file to the consumer, because these are the underlying codes used by Experian's computer system to match an inquiry with information contained within that system. Further, Mr. Wilson's D/R Logs each contain a report (or "CAPID") number generated by Experian's computer system. Mr. Wilson's D/R Logs have never been produced before. Mr. Wilson's D/R Logs contain clues to the design architecture of Experian's system. Experian's competitors would benefit greatly by gaining access to such information. Thus, Experian works hard to protect it.

### C. Disclosure Request Logs

13. The third category of Confidential Documents Experian seeks to withhold in this particular case, absent a protective order, are Mr. Wilson's Disclosure Request Logs. These particular Disclosure Request Logs include a confidential internal PIN and list personal identifying information -- none of which, in accordance with federal regulation under the Fair Credit Reporting Act, can be provided without a permissible purpose and should not, therefore, be part of the public record. Further, Mr. Wilson's Disclosure Request Logs contain CAPID numbers generated by Experian's computer system each time a disclosure is made. Mr. Wilson's Disclosure Request Logs have never been produced before. The way in which this type of consumer information is coded and stored throughout Experian's vast computer system is extremely confidential and, as such, Experian strives to protect it.

14. The Confidential Documents Plaintiff seeks are not part of the credit reports Experian provides to third parties, or part of the file disclosures Experian provided to Mr. Wilson. The Confidential Documents were compiled by, and generated from, Experian's computer systems for investigative and research purposes. The Confidential Documents may be generated by only a very limited number of trained Experian employees. Accordingly, Experian goes to great lengths to avoid producing these documents without a protective order.

### D. Experian's Subscriber Service Agreement with American Express

15. Experian's Subscriber Service Agreement with American Express was entered into on March 12, 1987. The agreement sets forth the services that Experian has agreed to provide for American Express, as well as limitations on American Express' use of the information provided to it by Experian, and limitations on Experian's use of information provided to it by American Express. The agreement contains a provision providing that all information relating to the business and activities of each of the respective parties to the

Agreement that is obtained as a result of the agreement is to remain confidential and must not be disclosed to third parties. Both American Express and Experian agreed to limit access to such information to its personnel on a need-to-know basis only. Revealing the terms and provisions of Experian's Subscriber Service Agreements would better enable Experian's competitors to compete against Experian.

### E. Experian Manuals at Issue

16. Experian manuals at issue contain proprietary information on how Experian maintains its credit reporting procedures. Like the Confidential Documents described above, Experian has invested considerable time and money in developing these materials and strives to ensure that they are not produced to third parties without a Court-sanctioned protective order. Access to these documents would facilitate a competitor's efforts to develop its own sophisticated systems at Experian's expense.

AFFIANT SAYETH FURTHER NOT.

_/s/ David Browne_
David Browne

October 18, 2004

STATE OF CALIFORNIA )
)
COUNTY OF ORANGE )

Sworn to and subscribed before me
this 20th day of _October_, 2004

_/s/_
Notary Public in and for the
State of California

Commission expires: 11-4-07

_/s/ David Browne_
October 20, 2004



MARINA VELARDI
Commission # 1449466
Notary Public - California
Orange County
My Comm. Expires Nov 4, 2007

CLI-1234971v2                              9